## In re RUSSELL TRANSFER, INC., Debtor.

### Bankruptcy No. 7–85–00364–R.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

April 15, 1985.

Gary L. Lumsden, Roanoke, Va., for debtor.

John R. Mooney, Beins, Axelrod & Osborne, P.C., Washington, D.C., for International Broth. of Teamsters.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

The issue involves the Debtor's motion for relief pursuant to 11 U.S.C. § 1113(e), which seeks modification of existing collective bargaining agreements.

The Debtor, an interstate trucking company, filed a Chapter 11 petition in this Court on April 2, 1985 seeking reorganization of its financial affairs. Thereafter, the Debtor filed motions to reject collective bargaining agreements with the International Brotherhood of Teamsters, as well as the motion for relief pursuant to the provisions of 11 U.S.C. § 1113(e).

Upon hearing of said motion to modify pursuant to § 1113(e), the only evidence presented was the testimony of the Comptroller of the Debtor in support of said motion. From this testimony, the facts appear to be as follows. The Debtor has contracts with three (3) Teamster local unions at its terminals in Roanoke and Richmond, Virginia and Eden, North Carolina. The collective bargaining agreement entered into by the Debtor and the Union provided for increases in the members' salaries and income from year to year, which have heretofore been accorded. These increments have resulted in part in the Debtor's financial difficulties, along with other increases in operating expenses such as insurance, maintenance, and attendant difficulties of competition due to deregulation of the interstate trucking industry.

The evidence further showed that the administrative non-Union employees have not received increments in salary as the Union employees had received for the last three (3) years and, in fact, had received, according to the testimony, no increase in salaries for said three-year period. Those employees comprise, for the most part, the employees át the headquarters terminal in Roanoke, as well as five (5) in Richmond and seven (7) in Eden, approximately thirty-nine (39) in all.[1]

The Comptroller testified that the Debtor could not continue to operate absent some adjustment and reduction in the wage scale of the Union employees; that the record of the last year reflects that for each dollar of revenue, the Debtor expended approximately $1.12; that a reduction in salary and holiday benefit payments of an approximate sum of twenty per cent (20%) of the Union employees would permit the Debtor to operate at an approximate break-even point; that some of the Union drivers had annual earnings of $30,000.00 to $35,000.00 a year under the agreement; however,

---

1. Modification is not sought at the Richmond terminal operation.

those drivers usually had a seventy (70) to seventy-five (75) hour work week in contrast to the administrative employees' forty (40) hour week.

The Debtor does not recommend reduction in administrative salaries and, further, that the adjustments in pay sought by the Debtor from this Court would deal only with the economic or wage scale terms of the agreement and not employment conditions.

Counsel for the International Brotherhood of Teamsters presented no evidence; however, he took exception to the Debtor's failure to request similar reduction of administrative employees' salaries and urged the Court to make reductions in administrative employees' salaries if the Court entered an Order adjusting the income of Union employees.

The bottom line and substance of the Comptroller's uncontradicted testimony before this Court is that the Debtor is unable to continue operation unless modification is granted and, further, that the provisions of § 1113(e) had been complied with by prior negotiations with the Union without coming to an agreement.

11 U.S.C. § 1113(e) provides as follows:

"If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement. Any hearing under this paragraph shall be scheduled in accordance with the needs of the trustee. The implementation of such interim changes shall not render the application for rejection moot."

It is noted that 11 U.S.C. § 1113 is a new Section enacted by the Congress as a part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, effective July 10, 1984. The statute arose out of court decisions permitting debtors with Union con-

tracts to enter this Court and, pursuant to 11 U.S.C. Section 365, seek rejection of collective bargaining agreements.

The court decisions in this area culminated in the Supreme Court decision *NLRB v. Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), affirming 682 F.2d 72 (3rd Cir.1982). Bildisco had ruled that collective bargaining agreements were rejectable under a discretionary formula set forth in the Third Circuit decision.

█ The Congress, by enacting § 1113, prescribed procedural standards which this Court may use in permitting the rejection of such agreements. However, this Court in rejecting such agreements may only do so in accordance with the provisions thereof. The provisions outline a procedure which requires a debtor to propose modification of the existing agreement with the Union under conditions set forth therein under a fair and equitable standard. The Court may only reject an agreement if the Court finds that the debtor has fulfilled the provisions of the Act and that the Union representative has failed to accept the proposal and that equity clearly favors rejection. The statute further outlines procedural requirements and timetables for hearings with respect to such motions. Section 1113(f) requires compliance and prohibits unilateral termination by the debtor.

█ Section 1113(e) was enacted as an emergency stopgap measure pending proceedings in the rejection process. It specifically provides that implementing this subsection in no wise moots the requirement for the rejection process. A reading of § 1113(e) clearly indicates a Congressional intent that relief under this sub-section shall be granted only as a means to avoid irreparable damage to the estate and permit the debtor to continue in business for the benefit of the debtors, its creditors, and to provide jobs for its employees. The Congress did not intend that this Court undertake the rewriting on a permanent basis of collective bargaining agreements. Even if the Court should undertake such a

chore, there is in this Court a lack of expertise making such permanent adjudications impractical. *See Sterling Mining Co., Inc. v. Kilgore,* 21 B.R. 66 (W.D.Va.1982).

The motion before the Court brings into focus a review of multiple rights. The Court must consider the interest of the debtor to continue a reorganization to continue to, hopefully, reorganize its financial affairs, the creditors who seek payment of their claims, and the employees hopes of maintaining and continuing jobs. The uncontradicted evidence before this Court is that a modification is required if the Debtor is to continue its operation. Section 1113(e) necessarily contemplates a temporary measure to provide time to the parties to resolve their differences and for the best interests of all parties seeking solutions to their existing agreement. *See Teamsters v. Bohack Corp.,* 541 F.2d 312 (2nd Cir. 1976), *cert. den.* 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978).

Section 1113(e) states that "during a period" when the collective bargaining agreement is continued necessarily means a temporary stopgap arrangement which may be provided by Orders of this Court. It does not contemplate this Court's modification of the existing agreement by Court Order over an extended, unlimited period of time which would substitute and nullify other provisions of the Section requiring negotiation between the parties and, possibly, rewriting the terms of their agreement.

■ The thrust of the Debtor's motion is one of hardship and irreparable harm to the Debtor if the existing agreement continues. The Debtor's uncontradicted evidence shows that the Debtor cannot continue absent modification. When circumstances such as these are presented, it is incumbent upon courts to equitably apportion the reduction of overhead even where the debtor does not so recommend. In this case, where the administrative employees have not received increases as Union employees have in the last three (3) years, a smaller reduction is in order. It is, therefore, the conclusion of the Court that the twenty per cent (20%) reduction outlined by the Debtor in Union employees' salaries and benefits will be granted, and a ten per cent (10%) reduction in salaries of administrative employees will likewise be ordered. This Order shall continue for a period of ninety (90) days, thereby providing time for the parties to implement further procedures under 11 U.S.C. § 1113.