**In the Matter of CENTURY BRASS PRODUCTS, INC., Debtor.**

**Civ. No. H85–756 (JAC).**

United States District Court,
D. Connecticut.

Nov. 7, 1985.

Michael B. Nicholson, Detroit, Mich., for appellant United Auto Workers.

Thomas M. Cloherty, Hartford, Conn., for appellee Century Brass, debtor in possession.

Lewis K. Wise, Hartford, Conn., for appellee Century Brass Creditors' Committee.

## APPEAL FROM AN ORDER OF THE U.S. BANKRUPTCY COURT

JOSÉ A. CABRANES, District Judge:

This matter is before the court on an appeal from the July 21, 1985, order of the U.S. Bankruptcy Court permitting Century Brass Products, Inc. ("Century Brass" or "the company") to reject its collective bargaining agreement with the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America and its Local 1604 ("UAW" or "the union").[1]

### I.

The UAW contends on appeal that Bankruptcy Judge Robert L. Krechevsky erred in finding that Century Brass had satisfied

---

**1.** A district court is to act in its appellate capacity in reviewing a bankruptcy court decision authorizing the rejection of a collective bargaining agreement. Consequently, the factual findings made by Judge Krechevsky below cannot be overturned unless they are found to be "clearly erroneous." *See* Bankruptcy Rule 8013; *In re Wheeling-Pittsburgh Steel Corporation,* 52 B.R. 997, 120 L.R.R.M. (BNA) 2198 (W.D.Pa. 1985).

The UAW also renews on appeal its argument that this court erred in refusing to withdraw its reference of this matter to the Bankruptcy Court. The court again rejects this argument for the reasons stated in its oral ruling of June 3, 1985. *See* Certified Official Transcript of a Hearing Conducted June 3, 1985 (filed June 6, 1985) at 53–59. Accordingly, the Bankruptcy Court properly exercised jurisdiction over this matter.

all prerequisites to the rejection of a collective bargaining agreement pursuant to 11 U.S.C. § 1113.[2] Specifically, the UAW argues that Century Brass cannot, consistently with Section 1113(c), propose modifications in the collective bargaining agreement that would reduce the benefits of retirees. Such modifications are not within the scope of § 1113(c), according to the UAW, because the union is not the "authorized representative" of the retirees, the proposal is not limited to "modifications in the employees' benefits and protections," and the union therefore has "good cause" to reject such modifications.

The UAW relies primarily on *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Company*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) ("*Pittsburgh Plate Glass*"), which held that retirees' benefits were not a mandatory subject of bargaining in the circumstances of that non-bankruptcy case. The court finds that *Pittsburgh Plate Glass*, assuming *arguendo* that it has some application in a bankruptcy context,[3] does not support the position advanced by the UAW in the instant case.

The Supreme Court indicated in *Pittsburgh Plate Glass, supra,* 404 U.S. at 179, 92 S.Ct. at 397, that one signatory to a collective bargaining agreement may insist that the other signatory bargain over the rights of third parties when those rights "vitally affect[ ]" the terms and conditions of employment of active employees. It is clear that in this case, unlike *Pittsburgh Plate Glass*, the level of benefits provided to retirees "vitally affects" the level of wages and benefits available to current employees and, indeed, the ability of Century Brass to remain in business. Accordingly, the court finds that there is no irreconcilable conflict between *Pittsburgh Plate Glass* and the subsequently enacted Section 1113.

It should be noted that there is nothing in *Pittsburgh Plate Glass* that would prohibit a union from negotiating either to increase or to decrease the benefits of retired workers. *See Pittsburgh Plate Glass, supra,* 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20. That decision merely states that neither an employer nor a union is required to bargain about such matters unless they "vitally affect" the interests of active employees. The Congress that enacted Section 1113 most likely assumed, consistently with *Pittsburgh Plate Glass*, that the rights of retired workers "vitally affect" the rights of current workers whenever their common employer files for protection under Chapter 11.[4]

**2.** Section 1113(c) of the Bankruptcy Code, 11 U.S.C. § 1113(c) provides that

> [t]he court shall approve an application for rejection of a collective bargaining agreement only if the court finds that:
> (1) The trustee [including a debtor in possession] has, prior to the hearing, made a proposal that fulfills the requirements of subsection 1113(b)(1);
> (2) The authorized representative of the employees has refused to accept such proposal without good cause; and
> (3) The balance of the equities clearly favors rejection of such agreement.

Section 1113(b)(1)(A) of the Bankruptcy Code, 11 U.S.C. § 1113(b)(1)(A), requires that the trustee

> make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees' benefits and protections that are necessary to permit the

reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably.

The trustee is obligated by Section 1113(b)(1)(B) to provide the employees' representative with "such relevant information as is necessary to evaluate the proposal."

**3.** The appellees argue that *Pittsburgh Plate Glass* has no application in a bankruptcy context because the subsequent decision of the Supreme Court in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), and the enactment by Congress of Section 1113 evidence a clear intent that bankruptcy law take precedence over labor law. The court finds it unnecessary to reach this argument in light of its holding that there is no conflict between *Pittsburgh Plate Glass* and Section 1113.

**4.** The court finds that footnote 20 of *Pittsburgh Plate Glass* does not dictate a different result. It is concededly true as a general matter that "[u]nder established contract principles, vested

■ Accordingly, the court finds that the UAW lacked "good cause" under Section 1113(c)(2) for its failure to negotiate with Century Brass concerning modification of their collective bargaining agreement.

■ The court likewise declines to find that Century Brass failed to comply with Section 1113(c)(1) because the union was not the "authorized representative" of the retirees or because the company's proposal was not limited to "modifications in the employees' benefits and protections." The appellees note that the legislative history of Section 1113 includes the statement of Senator Thurmond, one of the Senate-House conferees, that "the intent is for these provisions to be interpreted in a workable manner" and not "to import traditional labor law concepts into a bankruptcy forum or turn the bankruptcy courts into a version of the National Labor Relations Board." 130 Cong.Rec. S8888 (daily ed. June 29, 1984). The most workable interpretation of Section 1113 is that the employer may demand that the union bargain over any "benefits and protections" provided to current and former employees by the collective bargaining agreement so long as the modification of those "benefits and protections" may be necessary to the rehabilitation of the employer. The union necessarily becomes the "authorized representative" of its retirees when it negotiates with the employer on their behalf and cannot later renounce that role when the employer seeks to modify the product of their negotiations under Section 1113.

The court recognizes the difficulties that its holding may present for unions that wish to avoid conflicts of interest in their representation of their different constituencies. However, unions already must attempt to reconcile the conflicting interests of current and retired employees whenever they engage in collective bargaining on behalf of both groups outside the bankruptcy context. It is perhaps understandable that

unions find such compromises less distasteful when they are dividing up gains rather than losses.

## II.

The UAW argues that, aside from whether Section 1113 requires a union to negotiate on behalf of its retirees, the decision of the Bankruptcy Court should be reversed for a number of other reasons.

First, the union asserts that the package of wage and benefit concessions proposed by Century Brass was "not necessary" to permit its reorganization. The Bankruptcy Court found in the instant case that

[a]fter considering the debtor's essentially nonmodifiable expenses, approximately $22 million remain for the payment of wages and benefits for all union and nonunion employees. The present annual cost of the union agreement is $20 million. The debtor's proposals, when combined with the proposed reductions for nonunion employees, project annual cost savings of $7,226,000, for a potential profit of $287,000.

*In the Matter of Century Brass Products, Inc.,* Case No. 2–85–00197 (Bankr.D.Conn. July 26, 1985), slip op. at 14. The Bankruptcy Court therefore determined that "the debtor's proposal contains the modifications necessary to permit the debtor's reorganization to proceed." *Id.* at 16.

■ It should be noted that "the 'necessary' standard of Section 1113 does not mean 'absolutely essential.'" *In re Wheeling-Pittsburgh Steel Corporation,* 52 B.R. 997, 1003, 120 L.R.R.M. (BNA) 2198, 2202 (W.D.Pa. August 28, 1985). Consequently, this court cannot conclude, based on its review of the record, that this finding of the Bankruptcy Court was "clearly erroneous."

Second, the union argues that the proposal does not treat all affected parties fairly and equitably. Instead, the union argues that its members will be required to bear a

retirement rights may not be altered without the pensioner's consent." *Pittsburgh Plate Glass, supra,* 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20. However, a principal purpose of bankruptcy law is to permit debtors to obtain some relief

from their contractual obligations. The UAW has cited no persuasive authority for the proposition that the contractual rights of retirees are not subject to compromise under the bankruptcy laws as are the rights of other creditors.

disproportionate share of the burden of the Century Brass reorganization.

■ The Bankruptcy Court found, in concluding that Century Brass had met its burden of proof on this issue, that

> [s]ubsequent to the filing of its chapter 11 petition, the debtor reduced the number of its management officials from six to two, and the number of salaried employees by twenty percent. Salaried employees now make a contribution toward their medical expense premiums. The creditors' committee asserts that the unsecured creditors have agreed to "shoulder" expected losses of approximately $1.4 million....

*In the Matter of Century Brass Products, Inc., supra,* slip op. at 16. This court cannot conclude, in light of such evidence, that the Bankruptcy Court erred in finding that the company's proposal treated all affected parties fairly and equitably.

■ Third, the union contends that Century Brass failed to bargain in good faith by filing for rejection of its collective bargaining agreement only four days after it had presented its proposed contract modifications to the union. However, this court cannot say that the four-day interval is "inherently unreasonable since Section 1113 has no time restraint relative to when the debtor, following the submission of a proposal, may file its rejection application." *In re Wheeling-Pittsburgh Steel Corporation, supra,* 52 B.R. at 1006, 120 L.R.R.M. at 2204. There is no indication in the record that the union was prejudiced in any manner by what it terms "Century's ... rush to the courthouse." Furthermore, the union has not established any other bad faith by Century Brass sufficient to reverse the decision of the Bankruptcy Court.

■ Finally, the union argues that the balance of the equities in this case does not clearly favor Century Brass. However, the Bankruptcy Court accepted the "unequivocal" statements of the company and the creditors' committee that Century Brass would go out of business if the proposed modifications were not instituted. These statements and other evidence led the court to conclude that the balance of the equities

clearly favored Century Brass because, "[i]n the event of liquidation, obviously, all employees, union and nonunion, will lose jobs." *In re Century Brass Products, Inc., supra,* slip op. at 23.

This court does not intend to trivialize the sacrifices that will be required of the current and retired employees of Century Brass if the reorganization is to succeed. However, it does not appear that the prospects for the company are so bleak, or the proposed wage and benefit reductions so onerous, as to tip the balance of the equities toward liquidation rather than reorganization. It is, of course, arguable that the company should consider, as a matter of sound and prudent management, permitting those workers who are sharing in its current hardships to likewise share in any future recovery.

### Conclusion:

For the reasons stated above, the decision of the Bankruptcy Court is affirmed. It is so ordered.