In re The BASTIAN COMPANY, INC.
a/k/a Bastian Brothers
Company, Debtor.

Bankruptcy No. 83–21071.

United States Bankruptcy Court,
W.D. New York.

Oct. 24, 1986.

Relin & Goldstein by Raymond Stilwell, Rochester, N.Y., for debtor.

Michael E. Reilly, Buffalo, N.Y., for Office & Professional Employees, Local 212, A.F.L.–C.I.O.

Angela Jones Arnett, Legal Dept., Washington, D.C., for Pension Ben. Guar. Corp.

Lacy, Katzen, Ryen & Mittleman by David D. MacKnight, Rochester, N.Y., for Creditors Committee.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This is an Application by the debtor to reject the pension plan of The Bastian Company, Inc., hereinafter the Company. The granting of this relief was opposed by Local 212, Office and Professional Employees International Union, A.F.L.–C.I.O., hereinafter the Union and Pension Benefit Guaranty Corporation, hereinafter PBGC. The attorneys for the creditors committee also appeared on behalf of the debtor.

It appears that the debtor filed his petition in bankruptcy September 30, 1983 and that the Collective Bargaining Agreement between the Company and the Union, which was not offered in evidence, expired on October 31, 1983. Subsequent to its expiration, there were negotiations between the Company and the Union and a memorandum of settlement (Exhibit # 1) was signed by the Company's representative, Albert A. Cauwels, who is the executive vice president and chief operating officer of the company and Gerald Skyeczkowski, representing the Union. This memorandum purported to settle the matters in dispute between the Company and the Union. However, paragraph 2 of this Agreement read as follows:

2. The Undersigned representatives of the parties do hereby agree to recommend complete acceptance of all the terms of this memorandum to their respective principals.

Mr. Cauwels, when he testified at the hearing stated that this document (Exhibit # 1) signed on November 1, 1983, was not intended to be binding upon the Company. However, testimony was offered that Blue Cross/Blue Shield payments which had previously been picked up by the Company were thereafter paid in part by the employees, in accordance with this document.

In February of 1984, the company commenced an action to terminate the pension benefits under the provisions of ERISA.

This cumulated in an Order of June 21, 1984 (not submitted in evidence). This Order, according to testimony, permitted the company to withdraw and terminate the pension benefits and provided for the payment of a withdrawal fee of $100,500 which represented a third of the value of the Company on June 21, 1984.

The first question that arises is what executory contract is the debtor attempting to reject? Is it the Agreement, not in evidence, which alledgedly expired October 31, 1983, one month after the filing of the petition in bankruptcy, or is it the second agreement which was signed November 1, 1983. The first has expired and the latter is not a contract because by its very terms it contemplates the acceptance of the terms of the contract by the principals of the bargainers and negates by the language of paragraph 2, the bargainers authority to sign on behalf of their principals. There has been no other contract providing pension benefits put in evidence by either party.

■ The debtor is attempting to reject an expired Agreement or a contract which they claim, and this Court agrees, does not exist. In any event, the pension agreement, if any, has already been terminated under ERISA.

■ But even if it is assumed, the contract sought to be rejected by this Agreement is the one that was in existence at the time of the filing of the petition in bankruptcy. The parties conceded somewhat reluctantly that *Bildisco* [1] applied to this case rather than the 1984 Amendments to the Bankruptcy Code. To be granted their Motion, the debtor was required to show that they met the test of *Bildisco* by showing that the equities favor rejection.

The only evidence relating to the equities came on the cross examination of Mr. Cauwels. It appears that subsequent to November, 1983, there were approximately two meetings with the Union to discuss benefits. No proposals were made by the Company because at that time Mr. Cauwels felt that the Company was insolvent. Mr. Cauwels has no idea what the reorganization plan will be in this case. However, it does appear that there is approximately 410,000 of secured debts, 550,000 unsecured claims, 230,000 of priority tax claims and 100,500 pension claims by PBGC. The Company is currently making $156,000 a year profit after regular payments to secured creditors. The Company does have an Agreement with the Job Development Authority, a secured creditor, which requires payments of $175,000 to the secured creditors in their plan. There is $136,000 in cash on hand. Their tax claim of approximately $230,000 must be paid during the five or six years of the plan.

A five year plan, using all the money available, would pay approximately $750,000 to creditors after a modest reserve for purchase of replacement tools and machines. The secured creditors have agreed to a $175,000 payment on confirmation of the plan, plus regular payments with interest during the duration of the plan. The tax claim is $230,000. This will leave approximately 50% dividend to unsecured creditors if the Company was permitted to reject the pension benefit plan and 40% if the Company pays to PBGC the amount provided in the Order of June 21, 1984. To offset this, the employees, to keep the Company going, are already paying their Blue Cross/Blue Shield payments.

Weighing the equities, it appears that it would be inequitable to permit the Company to avoid payment of the PBGC's claim as a priority claim to merely increase the dividend to unsecured creditors from 40% to 50%. Therefore, the equities favor the denial of this Motion and it is so ordered.

**1.** *NLRB v. Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482.