**In the Matter of PATRICK CUDAHY INCORPORATED, Debtor.**

**Bankruptcy No. 87–05413.**

United States Bankruptcy Court, E.D. Wisconsin.

March 13, 1989.

---

Mark Gisler, Washington, D.C., Gerald McKinney, for N.L.R.B.

Daniel L. Shneidman, Milwaukee, Wis., for Official Retirees' Committee.

Kenneth R. Loebel, Milwaukee, Wis., for P40–UFCW.

David F. Loeffler, Howard A. Schoenfeld, Milwaukee, Wis., Attorney for Patrick Cudahy Inc.

John R. Byrnes, for Office of the U.S. Trustee.

I. William Cohen, Detroit, Mich., Peter Blain, Milwaukee, Wis., for Official Committee of Unsecured Creditors.

Jerome R. Kerkman, Milwaukee, Wis., for Molly Corp.

Paul Medved, Milwaukee, Wis., for Sovran Bank, N.A.

RUSSELL A. EISENBERG,
Bankruptcy Judge.

## FINDINGS AND ORDER PERTAINING TO:

(1) CLAIM OF JOSEPH A. SZABO, REGIONAL DIRECTOR NATIONAL LABOR RELATIONS BOARD THIRTIETH REGION, ACTING ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD AS STATUTORY AGENT OF CERTAIN EMPLOYEES

(2) CLAIM OF UNITED FOOD AND COMMERCIAL WORKERS INDUSTRY PENSION FUND;

(3) CLAIM OF LOCAL P–40 UNITED FOOD & COMMERCIAL WORKERS, AFL–CIO, CLC; and

(4) MOTION OF LOCAL P–40, UNITED FOOD AND COMMERCIAL WORKERS UNION FOR AN ORDER DIRECTING THE NATIONAL LABOR RELATIONS BOARD TO PROVIDE THE COURT WITH CERTAIN DOCUMENTS WHICH ARE PRESENTLY UNDER THE CONTROL OF SAID AGENCY

On December 23, 1987, Local P–40 United Food & Commercial Workers, AFL–CIO, CLC ("Union") filed a claim in the amount of $30,200,000.00. On October 19, 1988, the debtor in possession ("Debtor") filed an objection to the allowance of that claim except in the amount of $6,535.00.

On February 12, 1988, United Food and Commercial Workers Industry Pension Fund ("Pension Fund") filed a claim in the sum of $42,310.00. On October 19, 1988, the Debtor objected to that claim. On February 13, 1989, the Pension Fund advised this court that it desired to withdraw its claim.

On January 13, 1989, Joseph A. Szabo, Regional Director, Region 30, National Labor Relations Board, acting on behalf of the National Labor Relations Board ("NLRB"), as statutory agent for certain claimants, filed a second amended claim in the sum of $226,892.63 plus $27,381.50 interest ($254,274.13 in all) plus an additional amount as yet unliquidated. On October 19, 1988, the Debtor had objected to a prior claim, and that objection also served as an objection to this claim.

On February 3, 1989, the Union filed a "Motion ... for an Order Directing the National Labor Relations Board to Provide the Court with Certain Documents which Are Presently under the Control of Said Agency and which Documents Are Necessary if the Court Is to Value the Union's Claim under the Bankruptcy Code." In his February 17, 1989, letter, counsel for the Union requested permission to withdraw this motion.

The Debtor advised the court that, because of the large amount of the Union's claim, it could not proceed to attempt to confirm a plan until that claim was valued. It requested the court to estimate the value of the claims of the Union, NLRB and the Pension Fund pursuant to 11 U.S.C. § 502(c), which *requires* the estimation of any claim liquidation of which would unduly delay the closing of the estate (HR Rep No. 95–595, 95th Cong, 1st Sess 354 (1977); S Rep No. 95–989, 95th Cong, 2d Sess 65 (1978)) U.S.Code Cong. & Admin. News 1978, pp. 5787, 5851, 6310 or "would unduly delay the administration of the case." 3 Collier on Bankruptcy, ¶ 502.03 at 502–74. 11 U.S.C. § 502(c) requires that all claims against the debtor be converted into dollar amounts. HR Rep No. 95–595, 95th Cong, 1st Sess 354 (1977); S Rep No. 95–

989, 95th Cong, 2d Sess 65 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5851, 6310.

The NLRB and the Union objected to this court estimating the value of their claims for purpose of allowance under 11 U.S.C. § 502(c). Both parties alleged that their claims pertain to labor-related matters, e.g., unfair labor practices such as purported unilateral changes in working conditions after contract expiration and bad faith bargaining, and that only the "Board" (the four to five panel members hearing appeals from an NLRB Administrative Law Judge ["ALJ"]) could determine the amount of their claims and accompanying remedies. Their claims relate to grievances and complaints presently being litigated before an NLRB ALJ which could be determined by an NLRB ALJ if the claimants' theories of law and their views of the facts are correct.

The court held evidentiary hearings on January 19, 1989, and on February 9, 1989, for the purpose of obtaining detailed facts to enable this court to determine the nature of the claims and the manner of proceeding with the claims and objections.

The NLRB and the Union have asked this court to await the future decision of the ALJ in placing a valuation on their claims. (February 15, 1989, letter of the National Labor Relations Board Office of the General Counsel to the court ["GC Letter"]). The NLRB recently announced that the trial, which was suspended in June, 1987, pending an interlocutory appeal (which appeal was decided in May, 1988), will resume May 9, 1989. It is not known when this trial will be concluded; it could be months later. Further interlocutory appeals are possible, and review by the Board is a certainty. Testimony and statements of counsel indicate that final adjudication of all issues is almost certainly years away, the shortest estimate being two and a half to three years, and the longest being five years or more.

The NLRB concedes that, "if the Board proceeding unduly delays the administration of this case, the Court would be empowered by the Code to estimate the Board's [sic] claim." (GC Letter). The Union agrees that "this Court can estimate the value of the Union's claims as to the Debtor to be the same as is set forth in the General Counsel/Board's Second Amended Proof of Multiple Claims or such other Proof of Multiple Claims that the General Counsel/Board might yet file." (February 17, 1989, letter of counsel for the Union to the Court). This court must now make a determination whether postponement of the estimation of valuation of claims until completion of the Board's proceedings "would unduly delay the administration of this case."

Testimony established that the Debtor cannot survive in Chapter 11 for the predicted period of time before the labor proceedings are concluded. Recruitment of management is very difficult. Some suppliers and customers refuse to do business with the Debtor while it is in Chapter 11. The Debtor cannot expand, and it cannot recruit additional vitally needed food brokers to sell its products. Morale and profitability are not good. The Debtor has equipment worth more than $1,000,000.00 which this court has not permitted the Debtor to sell, as its sale would have removed all options available to persons other than the debtor who have indicated a desire to file competing plans. The debtor is paying a substantial amount of interest pertaining to that idle depreciating equipment. Administrative expenses are approximately $25,000.00 a week. Even two to three more years in bankruptcy would result in the demise of the Debtor. Should that happen, any subsequent determination by the Board would be relatively meaningless.

This court has great respect for the NLRB. The NLRB's procedures, however, are such that it is impossible for an ALJ and for the Board to move as rapidly as is needed in a bankruptcy case of this kind. The policy of the Labor Management Relations Act, 1947, Amended 1959 (29 U.S.C.A. § 141 et seq.,) is "to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to

protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes...." In contrast, "the policy of Chapter 11 is to permit successful rehabilitation of debtors...." *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 527, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984). "The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources." *Id.* at 528, 104 S.Ct. at 1197.

It is now necessary to move on with this case. There was credible testimony that the Debtor will be out of business by the time the Board completes its work and the appeals to the United States Court of Appeals are concluded. Hundreds of present employees will lose their jobs, and a large, still undetermined number of retirees will be without vitally needed health and/or life insurance benefits. That will not further either bankruptcy or labor policies. As was stated in *Bildisco* in the context of executory contracts, the point in a case can be reached when "action by the Bankruptcy Court is required," if "the policies of the NLRA have been adequately served...." *Id.* at 526, 104 S.Ct. at 1197. This case is at that point.

The court finds that the condition set by the NLRB in its GC Letter—that this court can value the NLRB's claim if the Board's proceeding unduly delays the administration of this case—has been satisfied.

The court has no intention of usurping the expansive grant of authority of the NLRB with respect to the debtor and is proceeding at this time only as to the financial matters necessary for the proper administration of this bankruptcy case. The court does not address, nor finally adjudicate, issues pertaining to underlying unfair labor practices and does not now determine the effect of its estimation of the value of the NLRB and the Union claims on proceedings before the NLRB.

IT IS NOW ORDERED, that:

1. The claim of United Food and Commercial Workers Industry Pension Fund is deemed withdrawn;

2. The Union's motion to withdraw its February 3, 1989, motion is granted, and that motion is now deemed withdrawn; and

3. This court will proceed to schedule hearings pursuant to 11 U.S.C. § 502(c) to estimate for allowance the claims of the NLRB and the Union.