In the Matter of UNITED ASSOCIATES OF DELAWARE, L.P., Debtor.

UNITED ASSOCIATES OF DELAWARE, L.P., et al., Plaintiffs,

v.

The DELAWARE SOLID WASTE AUTHORITY, Defendant.

Bankruptcy No. 90–786.
Adv. No. 91–16.

United States Bankruptcy Court, D. Delaware.

May 21, 1992.

David W. O'Connor, Laura Davis Jones, Wilmington, Del., for debtor/plaintiffs.

Frank J. Perch, III, Philadelphia, Pa., for debtor/plaintiffs.

Jeremy W. Homer, Dover, Del., for defendant.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

In this adversary proceeding, the Delaware Solid Waste Authority moves for summary judgment on the complaint of co-Debtors, United Associates of Delaware, L.P. and United Power Services, Inc. (collectively United). DSWA also moves for summary judgment on the issue of liability on its own three counterclaims. United cross-moves for summary judgment. This is a core proceeding. 28 U.S.C. § 157(b)(2)(E) & (O) (1991).

## I. *Facts*

The record here includes transcripts, affidavits, and a joint pre-trial stipulation submitted by the parties, as well as admissions contained in the pleadings. The following facts are not disputed and thus may be considered for both motions for summary judgment.

DSWA owns and operates solid waste processing facilities located at Pigeon Point, Delaware. These facilities are collectively called the Delaware Reclamation Project (DRP). The DRP produces solid waste and refuse derived fuel (RDF), both of which can be combusted to produce energy. Until February 1991, United owned and operated a waste-to-energy facility (EGF) that utilized DSWA's solid waste and RDF. The EGF is also located at Pigeon Point on lands leased to United Associates by DSWA. On June 15, 1989, DSWA and United Associates entered into a service agreement governing this relationship.

The agreement required that:

1. United Associates would, on an annual basis, burn specified quantities of solid waste and RDF, and generate for use by the DRP specified quantities of electricity. Restated Service Agreement For Processing Refuse Derived Fuel and Solid Waste, ¶¶ 2, 4.C (June 15, 1989).

2. United Associates would provide other related services, including hauling and landfilling. ¶¶ 2.E, 6.

3. DSWA would pay United Associates a monthly "processing fee" based on a formula which amounted to roughly $800,000.00 per month for the year commencing June, 1990. The agreement allowed DSWA to pay this amount at the end of the month succeeding the month in which the services were provided. DSWA was entitled to a percentage discount if it paid on the first day of that successive month. ¶ 5.

4. The agreement provided that: "[DSWA] may not set off any monies due it under this agreement against

any payment of Processing Fee." ¶ 5.J.

5. The agreement also provided that: "If [United Associates] for any reason ... is unable or fails to receive and process ... in any month [the minimum specified amounts of solid waste and RDF, DSWA] shall have no obligation to pay any Processing Fee with respect to such period.... ¶ 5.G.(1).

United also executed a security agreement for the benefit of certain parties. The agreement designated a collateral agent acting on behalf of these secured parties. DSWA executed a "consent and agreement" relating to that security agreement which provided that DSWA agreed to pay to the collateral agent "all amounts which become due and payable [to United Associates under the service agreement], without setoff, defense, counterclaim, or any other reduction whatsoever." Consent and Agreement of The Delaware Solid Waste Authority, § 4 (June 20, 1989).

United shut down the combustion unit at the EGF on September 27, 1990. United Associates, United Power, and a third co-Debtor, United Resources of America, Inc., filed Chapter 11 petitions on October 22, 1990. Post-petition, United Associates continued to provide the hauling services, but did not combust any materials in October, November, or December. In January and February 1991, United Associates did combust a minimal amount of RDF and solid waste that, on a monthly basis, was far below the quantity the service agreement specified.

DSWA paid United Associates at the contract rate for the months of October and November. It also paid $796,000 that United stipulates satisfied DSWA contractual payment obligations for services United Associates rendered in December, 1990. At some point before its payment was due for January, 1991 services, DSWA informed United Associates that it did not intend to make any further payments pursuant to the service agreement. This dispute resulted in a February 21, 1991 Order

of Payment of Wages, pursuant to which DSWA paid United Associates an additional $123,289.16 "to satisfy [United's] payroll obligations." Case No. 90–786, M–91–34, Docket No. 7. DSWA's payments for post-petition services total $2,508,898.50.

On February 28, 1991, this court approved a stipulation between the Debtors, DSWA, and General Electric Capital Corporation (a creditor of the Debtors), rejecting the service agreement as of that date.

## II. *The Relief Each Party Requests In The Adversary Proceeding*

United initiated this adversary proceeding on February 8, 1991. Count I alleges DSWA anticipatorily breached its February 1991 payment obligation of $800,000 for services rendered in January and seeks damages in that amount. Count II seeks a declaratory judgment that "to the extend [sic] that [United] perform[s] services under the Agreement in February 1991 and in subsequent months, the minimum fee of $800,000 per month will be due and payable to [United Associates] without set off [sic], defense, counterclaim or reductions." Debtor's Complaint, ¶ 30.

DSWA raises ten affirmative defenses and denies liability except to the extent of the actual value of services United provided post-petition. DSWA estimates this value as approximately $400,000.

In addition, DSWA raises three counterclaims. First, it counterclaims for $2,508,-898.50,[1] the total of the payments it made to United pursuant to the agreement post-petition. DSWA seeks an administrative claim of $2,108,899.50 (the total of its claim minus the alleged actual value of United's services).

DSWA's second counterclaim separately seeks a judgment for $123,289.16, the amount it paid pursuant to the February 21 wage order of this court. It appears that this amount is included in the $2,508,899.50 figure DSWA seeks in its first counterclaim. Third, DSWA counterclaims for $1,690,000.00 in lost energy revenues, lost

---

1. In its briefing, DSWA attempts to increase its claim by $96,088.59. The court will not sanc-

tion this informal and improper attempt to "amend" its complaint. *See* Fed.R.Civ.P. 15(a).

landfill volume and related losses. The court surmises that DSWA's second and third counterclaims are in the alternative to its first counterclaim.

### III. *Discussion*

#### A. The Status of United's Claims

Federal Rule of Civil Procedure 56, applicable here via Bankruptcy Rule 7056, allows either party to seek summary judgment on a "claim" or "counterclaim." DSWA moves for summary judgment "with respect to the relief sought in the Complaint," and "with respect to the question of liability regarding Defendant's counterclaims." Docket No. 12, at 1. United has cross-moved for summary judgment on these matters. As the joint pretrial order indicates, several undisputed occurrences subsequent to the filing of United's complaint have changed the nature of United's claims. These changes must be considered, for the court will not rule on legal issues that are no longer of legal consequence. *E.g., Hamman v. Southwestern Gas Pipeline,* 721 F.2d 140, 143–44 (5th Cir.1983).

First, in reference to United's first count, DSWA did not pay the $800,000 in February for January services, except to the extent of the wage order. Thus, the anticipatory aspect of United's breach of contract count has been eliminated.

In reference to United's second count, through the aforementioned February 28 stipulation, United waived any claim it had against DSWA post-petition through December 31, 1990. The stipulation also waived all United's claims against DSWA that arose after February 8. Case No. 90–786, Docket No. 103. Thus, United's request for declaratory relief is of no legal consequence.

Finally, United's complaint contained some allegations that DSWA unilaterally changed its former payment practice of paying "early" on the first of the successive month to earn the percentage discount. *See* Complaint, ¶¶ 11, 12. The parties' briefing refers to these allegations in the legal context of whether and when DSWA's monthly payments were due. Without ruling upon the relevancy of these factual and concomitant legal issues at the time the complaint was filed, it is clear that these issues have no relevance now.

United's complaint is now merely a claim for damages arising out of the contract period January 1 to February 8, 1991. United certifies in its brief that "services were rendered during January and February 1991 which equal or exceed the payments due from DSWA under the contract". Memorandum of Plaintiff, at 8. With respect to DSWA's motion for summary judgment upon "the relief sought in the Complaint," this is the claim for relief the court will consider.

#### B. United Is Only Entitled To The Actual Value Of Its Post–Petition Services.

■ In considering a motion for summary judgment, the court views the record in the light most favorable to the nonmovant, and determines whether the movant is entitled to judgment as a matter of law. Where there are cross-motions for summary judgment, each motion must be considered separately, and both motions will be denied if material issues of fact exist. *E.g., Marvel v. Lasher (In re Marvel),* 138 B.R. 451, 451 (Bkr.D.Del.1992).

As an overview, DSWA contends the net result of this adversary should be a judgment granting it an administrative claim equal to its post-petition payments minus the value of post-petition services United rendered. United contends the result should be a judgment in its favor equal to DSWA's contractual obligations in January and February minus the amount DSWA paid under the wage order. The first legal issue the cross-motions raise is, in light of the fact that the service agreement has been rejected, whether DSWA is required to compensate United for post-petition services at the contract rate of roughly $800,-000 per month, or at a rate which reflects the actual value of the services which United provided DSWA in each post-petition month (which DSWA asserts is much less than the contract value).

■ Preliminarily, the court must determine the date of the breach of the agreement. Section 365(g) of Title 11 of the Bankruptcy Code states:

> [T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
>> (1) if such contract or lease has not been assumed ..., immediately before the date of the filing of the petition ...

Rejection of a contract such as the service agreement here constitutes a breach of the agreement immediately before the date of the filing of the bankruptcy petition. *Sharon Steel Corp. v. National Fuel Gas Distrib.*, 872 F.2d 36, 41 (3d Cir.1989) (applying § 365(g)(1)).

Having established the date of the breach, it remains to determine the standard to measure DSWA's obligations after the breach. United argues those obligations are measured by the contractual $800,000 payments for those months post-petition but pre-rejection. In support United cites *In re Metro Transp. Co.*, 87 B.R. 338, 342–43 (Bkr.E.D.Pa.1988). The language in *Metro* that United relies upon is cited out of context. Similarly, the other cases United cites, from other Circuits, do not support its position. United's position is wholly inconsistent with bankruptcy law.

Bankruptcy law does not allow a debtor to reject a contract but still maintain its benefits. The debtor must either reject the contract in full, or assume it in full. *E.g., Sharon Steel*, 872 F.2d at 40, 42. Here, United has rejected the service agreement, and it therefore cannot claim the benefit of DSWA's contractual obligation of the $800,000 monthly payment post-petition. As DSWA asserts, it is only obligated to pay the "reasonable value of those services" provided by United post-petition. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1198, 79 L.Ed.2d 482 (1983) (citation omitted). Neither the rejection date nor anything else contained in the February 28, 1991 stipulation of rejection changes this analysis or result. United's claim for damages from January 1 through February 8, 1991 will thus be based upon the reasonable value of those services contemplated by the contract.

C. Legal Issues Relating To DSWA's Counterclaims

### 1. *The Set-off "Issues" Will Not Be Ruled Upon.*

United has suggested in its briefing that the court rule upon the issue of whether the contract provision stating that "DSWA may not set off any monies due it under this agreement against any payment of processing fee" bars DSWA's counterclaims. June 15, 1989 Agreement, ¶ 5.J. DSWA has raised several arguments in opposition to United's legal argument, including that the contract provision relieving DSWA from its obligation to pay a processing fee "if [United Associates] for any reason ... is unable or fails to receive and process ... in any month [the specified quantities of solid waste and RDF.]" creates a question of fact as to the proper interpretation of the set-off clause. *See* ¶ 5.G.(1).

United suggests in an argument parallel to the one based upon ¶ 5.J., that the language of section four of the consent and agreement that DSWA and the collateral agent executed bars DSWA's counterclaims. DSWA also opposes this argument, contending *inter alia*, that United does not have standing as a third party beneficiary to raise rights created by a document it was not a party to, and that the consent and agreement is wholly inoperative in light of United's rejection of the service agreement.

United's present pleadings at best refer to the set-off bar clauses in an off-handed manner. Moreover, the references do not properly raise these issues in those portions of its pleadings that have legal consequence. As previously observed, the facts underlying United's claims have changed since the filing of its complaint, which United has failed to amend. The court will not attempt to predict whether or how United might raise the set-off issues in future pleadings in the context of a rejected executory contract. Therefore, the court will not rule on these hypothetical matters.

*See Carroll v. Paramount Pictures,* 3 F.R.D. 47, 48 (S.D.N.Y.1943) (on a motion for summary judgment, legal issues shall not be considered when not pleaded properly even though discussed in great detail in the briefing).

2. *There Remain Issues Of Fact Only With Respect To The Amount Of DSWA's Third Counterclaim.*

United stipulates to the payment amounts claimed in DSWA's first and second counterclaims. That United's own claim may cancel out a portion or all of those counterclaims is not relevant to the issue of whether summary judgment is appropriate. The court emphasizes that United has only one affirmative claim for relief in this adversary—the value of the services it rendered post-petition. The value of these services cannot be used a second time to reduce in whole or in part DSWA's claims. *See* Fed.R.Civ.P. 13(c). Thus, there are no issues of fact with respect to the amount of DSWA's first and second claims.

However, the parties do genuinely dispute the amount of damages DSWA is entitled to under its third counterclaim.

3. *DSWA's First And Second Counterclaims Are Entitled To Administrative Expense Priority.*

■ The next legal issue the parties wish the court to resolve is whether DSWA's counterclaims are entitled to an administrative expense priority. Section 503(b) of Title 11 states:

[T]here shall be allowed administrative expenses, ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

In reference to DSWA's first counterclaim, the parties have presented the court with a factual record of how the cash payments DSWA made to the co-Debtors were used. United admits that post-petition, DSWA provided the only material source of revenue. Complaint, ¶ 10. United admits that the post-petition monthly payments were needed and used for operating expenses such as wages and supplier costs, as well as physical and operational repairs necessary to bring the EGF into compliance with its regulatory permits. Complaint, ¶¶ 10, 17; Memorandum of Plaintiff, at 13. This record is sufficient to rule that as a matter of law, all of DSWA's payments qualify for an administrative expense priority. *See generally* 3 *Collier on Bankruptcy* ¶ 503.04, at 503–20–21 (1991).

In reference to DSWA's second counterclaim, the wage order states "DSWA shall be entitled to an administrative claim in the amount [paid], if this Court ultimately determines that payment is not due for the month of January, 1991." Case No. 90–786, M–91–34, Docket No. 7. Thus, it has already been determined that the $123,289.16 payment is entitled to administrative expense priority.

In reference to DSWA's third counterclaim, the record is woefully deficient. Both parties' motions for summary judgment on the § 503(b) legal issue are denied on this counterclaim.

IV. *Conclusion*

While a trial on the remaining material factual issues may eventually be required, DSWA suggests that such a trial be deferred until such time as it appears that there are monies in the estate to pay administrative claims. United has not responded to this suggestion. Given the circumstances of these Debtors' Chapter 11 proceedings, the court agrees with DSWA. An order in accordance with this Memorandum Opinion is attached.

ORDER

AND NOW, May 21, 1992, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. The motion for summary judgment of United Associates, L.P. and United Power, Inc. on its claim for damages and the counterclaims of the Delaware Solid Waste Authority is DENIED.
2. The motion for partial summary judgment of the Delaware Solid Waste

Authority on United's complaint is GRANTED—United is entitled to only the actual value of the services performed January 1, 1991 through February 8, 1991, and not the contract rate.

3. The motion for summary judgment of the Delaware Solid Waste Authority on the amount and § 503(b) status of its first and second counterclaims is GRANTED.

4. The motion for summary judgment of the Delaware Solid Waste Authority on its third counterclaim is DENIED.

5. No trial on this adversary proceeding will be scheduled without further order of this court.