In re TIE COMMUNICATIONS, INC., et al.

TIE COMMUNICATIONS, INC.

v.

NYNEX CORPORATION, NYNEX Business Information Systems Company.

Bankruptcy Nos. 91–362 to 91–386. Adv. No. 91–68.

United States Bankruptcy Court, D. Delaware.

March 29, 1993.

William Prickett, Wilmington, DE.

Lawrence C. Ashby, William P. Bowden, Wilmington, DE.

HELEN S. BALICK, Bankruptcy Judge.

This is the court's decision on the cross-motions for summary judgment by the Plaintiff TIE Communications, Inc. and the Defendants NYNEX Corporation and NYNEX Business Information Systems Company (collectively "NYNEX").

### I. *The court has jurisdiction to enter a final order.*

NYNEX consents to the entry of a final judgment in this matter. 28 U.S.C. § 157(c)(2). In response to a recent interrogatory by the court, TIE takes the position that it does not consent to entry of a final judgment. The court concludes, however, that TIE's attempt to avoid the court's jurisdiction to enter final orders comes too late.

■ TIE voluntarily filed its Chapter 11 bankruptcy petition and later filed this adversary action in this court. No stay barred TIE from filing this action in another court of competent jurisdiction. TIE thus *chose* this court for the filing of this adversary. The filings waive any objection TIE might have to the jurisdiction of this court to enter final orders. *Commodity*

*Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848–50, 106 S.Ct. 3245, 3255–56, 92 L.Ed.2d 675 (1986) (party who opts to initiate administrative proceeding to adjudicate dispute waives right to Article III Court).

■ Of independent significance, TIE's complaint itself indicates TIE's consent. TIE's jurisdictional statement in its complaint avers that this is a proceeding under 28 U.S.C. § 157(b)(1). Docket No. 1, ¶ 10. Section 157(b)(1) deals only with matters regarding which the bankruptcy court can enter final orders. *E.g.*, 1 *Collier on Bankruptcy* ¶ 3.01, at 3–40 (1992). TIE's prayer for relief contained in its complaint did not ask for a report and recommendation to the United States District Court for these elements of relief. The prayer requested that *this* court award it legal damages and equitable relief.[1]

### II. *Procedural Background*

TIE filed this proceeding against NYNEX seeking damages in the range of ten to twelve million dollars for an alleged breach of contract. The subject matter of the alleged contract was TIE's purchase of NYNEX's business customer base relating to previously-installed computer and telephone systems (NYNEX subsequently agreed to sell this customer base to a competitor of TIE, WilTel Communications). NYNEX argues a binding contract was never formed with TIE and that furthermore, the New York Statute of Frauds bars its enforcement. The court agrees with NYNEX's first argument and does not reach the second argument.

### III. *Legal Standard*

■ In considering a motion for summary judgment, the court views the record in the light most favorable to the non-movant, and determines whether the movant is entitled to judgment as a matter of law. Where there are cross-motions for summary judgment, each motion must be

---

1. TIE's position embedded in this complaint filed on May 24, 1991—that this court *has* jurisdiction to enter final orders—remained consistent in its subsequent pleadings filed during the next one and a half years. Only on February 11, 1993 did TIE first assert its current position.

considered separately, and both motions will be denied if any genuine issues of material fact exist. *E.g., United Associates of Delaware, L.P. v. Delaware Solid Waste Authority (In re United Associates of Delaware, L.P.)*, 140 B.R. 368, 371 (Bankr.D.Del.1992). The record is sufficiently developed to rule upon NYNEX's motion for summary judgment. The court will view the record and the inferences therefrom in the light most favorable to TIE.

## IV. *Discussion*

■ The parties agree that New York law applies to this contract dispute. NYNEX argues that, assuming TIE can ultimately prove at trial the existence of an oral agreement, the agreement would be unenforceable because NYNEX and TIE did not intend to be bound by an oral agreement absent the execution of a formal, written document. Such a document does not exist here. NYNEX has the burden of proof on this issue of whether the parties intended to be bound only upon the execution of a written agreement. *E.g., V'Soske v. Barwick*, 404 F.2d 495, 499 (2d Cir.1968), *cert. denied*, 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969).

TIE has raised no genuine issue of fact with respect to NYNEX's argument, and the record is more than sufficient to satisfy NYNEX's burden. TIE has pointed to four factors it argues New York courts consider in determining whether the parties intended to be bound only upon the execution of a written agreement: explicit statements of the parties not to be bound without a signed writing, partial performance by the party attempting to enforce the alleged agreement, the existence of unresolved contract issues, and whether the contract was of the type that typically would be in writing. *E.g., R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75–76 (2d Cir. 1984).

These four factors all strongly favor NYNEX. The parties' March 18, 1991 letter of intent explicitly required such a writing. Docket No. 58, Ex.G, ¶ B.2 & B.9. TIE's subsequent contract draft sent to NYNEX on April 1 contained similar language requiring a writing. *Id.*, Ex. H, ¶ 6.3. *E.g., Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 262 (2d Cir.1984) (draft contract language requiring executed writing objective evidence of intent not to be bound). TIE's suggestion that NYNEX is required in its communications with TIE to reiterate its intent not to be bound absent an executed writing is wholly unreasonable and inconsistent with New York law. *See e.g. R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75 (2d Cir.1984) (citing cases).[2]

TIE's argument that it partly performed the contract is also without merit. For example, the drafting of a press release concerning the sale was at best unilateral conduct not known or bargained for by NYNEX. Also, the conduct was of a type that could precede rather than follow the formation of a contract. *Gracie Square Realty Corp. v. Choice Realty Corp.*, 305 N.Y. 271, 113 N.E.2d 416, 421 (1953); *see Teachers Ins. and Annuity Ass'n v. Tribune Co.*, 670 F.Supp. 491, 502 (S.D.N.Y. 1987);

Open contract issues existed at all relevant times. The letter of intent states that "all of the material terms of such proposed transaction are not yet agreed upon between NYNEX and TSI and must still be agreed upon to the mutual satisfaction of NYNEX and TSI."[3] DX–G, ¶ B. 6. The expiration date of this letter, April 12, passed without resolution of the material issues.

These issues were not resolved later. Negotiators for TIE (and not surprisingly negotiators for NYNEX) believed there was no binding oral agreement prior to April 23.

---

**2.** NYNEX argues that where this first factor clearly indicates the parties' intent, it is not necessary to consider the other factors. *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72–73 (2d Cir.1989). The court will not rule on this legal issue, as it will not affect the outcome of NYNEX's motion for summary judgment.

**3.** TSI is an abbreviation for TIE Systems, Inc., the relevant operating subsidiary in the proposed transaction.

Moreover, on April 24, TIE met with NYNEX to resolve three contract issues—calculation of royalties, assignability of customer contracts, and a penalty clause for insufficient royalties. Randolph Piechocki, President of TSI, conceded that the royalty provision "was an essential part of the deal." Docket No. 58, Ex. F, at 73. Finally, on May 3, Eric Carter, President of TIE, wrote to Douglas J. Mello, President of NYNEX, asking him to allow the parties to continue and conclude the negotiations.

With respect to the fourth *R.G. Group* factor, Piechocki conceded that contracts of this type were normally reduced to writing. He further conceded that TIE would have not closed the transaction contemplated here without a written contract.

This case presents a much easier set of facts than those in *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257 (2d Cir.1984) (a decision NYNEX and TIE discuss). There the parties had resolved all contract issues and had orally approved a draft contract. Yet the *Reprosystem* court refused to find a binding contract had been formed, in part because of the presence of language in the draft requiring its formal execution as a condition precedent.

## V.   *Conclusion*

In summary, as a matter of New York law, the parties did not enter into a binding contract. NYNEX's motion for summary judgment is GRANTED. TIE's motion for summary judgment is DENIED.

IT IS SO ORDERED.