**Cecil McDONALD and Palmito Estates, Inc., Appellants,**

v.

**Jesus P. RODRIGUEZ, et al., Appellees.**

**In re EMPRESAS EL RANCHO, INC., Corona Air Conditioning, Inc., Debtors.**

**Gary KNOSTMAN, Trustee, Plaintiff,**

v.

**Cecil McDONALD and Palmito Estates, Inc., Defendants.**

Civ. A. No. L–93–69.
Bankruptcy Nos. 83–02038–L–11, 83–02039–L–11.
Adv. No. 84–0045–L.

United States District Court,
S.D. Texas,
Laredo Division.

March 29, 1995.

Alejandro E. Villarreal, III, Person, Whitworth, Ramos, Borchers & Mor, Laredo, TX, for Empresas El Rancho, Inc.

Gary J. Knostman, Trustee.

### MEMORANDUM AND ORDER

KAZEN, District Judge.

This is an appeal from an order by the Bankruptcy Court affirming the arbitrator's orders in several cases.

#### Background

The appeal involves entitlement to certain property in Webb County, Texas. The property was originally owned by Palmito Estates, Inc., of which Cecil McDonald was president. The McDonald Group sold the property to a group controlled by Orlando Benitez, President of Empresas El Rancho, Inc. and Corona Air Conditioning, Inc. As consideration for the sale, the McDonald Group took a note from the Benitez Group, secured by a valid deed of trust on the property. The Benitez Group then began selling the property in smaller portions to various individuals. Apparently the McDonald Group was not receiving required payments on the note and eventually was allowed to foreclose on the property. The two Benitez companies then went into bankruptcy. This case arises from an adversary proceeding in those bankruptcies.

On October 1, 1987, Bankruptcy Judge Manuel Leal signed a judgment approving a settlement agreement. Among the parties to the settlement agreement were representatives of a class of people consisting of persons who had in good faith entered into contracts to purchase portions of the land from the Benitez Group. Particular individuals were designated as representatives of different classes of purchasers. All parties had notice of the pertinent proceedings and were represented by attorneys. The purpose of the settlement agreement, incorporated into the judgment, was to resolve title disputes between the various individual purchasers from the Benitez Group and the mortgagee, the McDonald Group. According

to the approved settlement, individual claimants had to meet certain clearly defined conditions in order to prevail.

More than 300 claimants proceeded to dispute resolution under the settlement agreement. This case involves seven persons whose claims are still unresolved.

The settlement agreement, in Paragraph sixteen, provided that any party could request binding arbitration to resolve disputes. The McDonald Group requested arbitration and eventually an arbitrator was named. On July 26, 1990, the arbitrator issued a proposed order in the pending cases, finding that the claimants in this appeal either had no interest in the property or else owed Palmito a specified sum of money for a particular tract. The claimants requested a hearing in response to the arbitrator's motion to confirm the order. At the hearing, the arbitrator expressly stated that his order was clearly dictated by the terms of the settlement agreement. He added a recommendation, however, that the Bankruptcy Court "do whatever it could to come up with an equitable conclusion." The bankruptcy judge responded by remanding the case to the arbitrator to allow consideration of equitable factors.

Approximately seven months later, on October 23, 1992, another hearing was held. This time the arbitrator reported that he had changed his order based on the equitable considerations, notably that the persons had each paid full price for the land, "albeit to a wrong person." On December 8, 1992, Bankruptcy Judge Schmidt signed the order confirming the arbitrator's new report, and it is from this order that the appeal is taken. The arbitrator's report candidly recognized that none of the claimants met any of the conditions in the settlement agreement and that his earlier report "was the correct application of the Settlement Agreement to those arbitration matters." The arbitrator further recited that he had subsequently been asked by the Bankruptcy Court to make additional recommendations in light of certain "equitable considerations," and then declared himself "not constrained by the Settlement Agreement." The equitable considerations stated in the report were that the claimants "were lost in a legal system that they did not understand" and would be deprived of interest in their property if the Settlement Agreement were to be followed. The arbitrator also noted that "some" of the claimants were not fluent in English, were not versed in real estate transactions, and failed to understand the significance of the receivership and bankruptcies of the Benitez Group. The arbitrator concluded that the claimants were "honest, hard working people some of whom trusted and had faith in people who took advantage of them."

### Applicable Law

█ In a Memorandum of February 9, 1995, this Court observed that the Federal Arbitration Act applies to any agreement calling for arbitration if that agreement evidences a transaction involving commerce. The Supreme Court has held that this phrase should be given a broad meaning, extending the federal commerce power "to the full." *Allied–Bruce Terminix Companies, Inc. v. Dobson*, —— U.S. ——, ——, 115 S.Ct. 834, 839, 130 L.Ed.2d 753 (1995). The settlement agreement providing for the arbitration at issue was intended to resolve a dispute over titles to portions of property encompassing over 700 acres in Webb County, Texas. The judgment approving the settlement indicates that the claimants to the land constituted a class "so numerous that joinder of all members is impracticable." The recent filings by the parties demonstrate that among the members of the class were residents of other states in the United States and also the Republic of Mexico. The Court is satisfied that this settlement agreement was a contract evidencing a transaction involving and affecting commerce. Therefore, the Federal Arbitration Act applies.

### Legal Analysis

█ Under federal law, review of an arbitrator's award is very deferential. The Court must sustain an arbitration award even if it disagrees with that award, so long as the arbitrator's decision "draws its essence" from the agreement which creates the arbitration right. *Executone Information Systems, Inc. v. Davis*, 26 F.3d 1314, 1320

(5th Cir.1994). The "essence" test itself is also deferential, requiring only that the award have a basis at least rationally inferable, if not obviously drawn, from the letter or purpose of the underlying agreement. *Id.* at 1325. However, the arbitrator "may not invalidate the very agreement from which he derives his power." *Id.* Actions of an arbitrator contrary to express contractual provisions will not be respected on judicial review. *Id.*

■ For example in *Delta Queen Steamboat Co. v. Dist. No. 2 Marine Eng.*, 889 F.2d 599 (5th Cir.1989), the court considered whether a labor arbitrator exceeded his contractual authority by ordering the reinstatement to full employment of a riverboat captain responsible for the near collision between a commercial passenger vessel and a tow of river barges. According to the governing collective bargaining agreement, the captain, Philip Ritchie, was subject to discharge for "proper cause," including carelessness. Despite finding that Ritchie was "grossly careless" in the incident, the arbitrator nevertheless ordered him reinstated because he "felt that it would be unfair, in light of Ritchie's forty years of untarnished maritime service, for the company to impose the draconian measure of termination." *Id.* at 601. Affirming the district court's vacation of the arbitration award, the Fifth Circuit held that while the arbitrator's decision was entitled to considerable deference, "his jurisdiction nevertheless is shaped by the underlying ... agreement." *Id.* at 602. The arbitrator may look beyond the written contract if the instrument is ambiguous or silent upon the precise question but where the arbitrator "exceeds the express limitations of his contractual mandate, judicial deference is at an end." *Id.*

■ In this case, both the arbitrator and the bankruptcy judge expressly recognized that the arbitrator's ultimate decision clearly exceeded the unambiguous provisions of the settlement agreement which created the arbitration right. While it is true that a bankruptcy court has broad equitable powers, it is not authorized "freewheeling consideration of every conceivable equity, but rather only how the equities relate to the success of the reorganization." *In re Continental Airlines Corp.*, 907 F.2d 1500, 1509, quoting from *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528–29, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984). Here the equities which influenced the bankruptcy court had no direct bearing on the success of the reorganization of the bankrupt, the Benitez Group, but rather were applied in an adversary situation between the McDonald Group and the various claimants. Moreover, in a proper judicial context, "equity" is not simply a subjective, *ad hoc* decision as to who is more deserving of winning a particular dispute. Equity rather invokes a collection of identifiable precepts that have been recognized over the decades as being necessary to fill gaps in the historical commonlaw. These precepts are illustrated by such venerable maxims as "one who seeks equity must do equity," "he who seeks equity must have clean hands," "equity aids the vigilant," etc., traditionally applied to redress imbalances between two parties. In this case, as best as this Court can determine, there was never any suggestion of overreaching, misrepresentation, or any other inequitable conduct by the McDonald Group towards the claimants. Instead the decision below was essentially that the claimants are well-intentioned people who should win notwithstanding the clear language of a settlement agreement approved by their attorney, their class representative, and the bankruptcy court.

This decision exceeded the express limitations of the contractual mandate at least as much, if not more, than the decision in *Delta Queen Steamboat.* It may well be that the claimants were not fluent in English, not versed in real estate transactions, and failed to understand the significance of receiverships and bankruptcies, but that would be true of many laymen. Again, however, there is no suggestion that the McDonald Group took advantage of these limitations. Further, it is precisely because the average layman is not familiar with the intricacies of legal proceedings that one hires an attorney and relies on the advice of that attorney. There is no indication that the McDonald Group colluded with claimants' attorney or overreached in any way.

**518**

In summary, the arbitration award approved by the bankruptcy court significantly exceeded the essence of the underlying contract which created the arbitration proceeding. The order confirming the arbitrator's orders in Arbitration Nos. 3, 4, 5, 6, 9, 10 and 14 must be reversed.

### JUDGMENT

Based on the Court's memorandum opinion of even date, it is ORDERED that the order of the Bankruptcy Court, dated December 8, 1992, confirming the arbitrator's orders in Arbitrations Nos. 3, 4, 5, 6, 9, 10 and 14 is REVERSED and this case is REMANDED for further proceedings not inconsistent with this opinion.